Dear Senator Burrage:
This office has received a request for an official Attorney General Opinion from your predecessor Senator Stratton Taylor, in which he asked, in effect, the following questions:
 1. May a federally recognized Indian tribe, which operates a casino where alcoholic beverages may lawfully be served, offer free or complimentary alcoholic beverages to its patrons so long as they are not offered as a "prize, premium or consideration for any lottery, game of chance or skill or any type of competition" under 37 O.S. Supp.2006, § 537(B)(3)?
 2. If the answer to question number 1 is "yes," may free or complimentary alcoholic beverages be offered only to patrons actually participating in a game of chance but without regard to winning or losing?
 SERVING ALCOHOLIC BEVERAGES IN INDIAN CASINOS UNDER THE STATE-TRIBAL GAMING ACT
Your questions apply to Oklahoma alcoholic beverage laws related to the offer of free or complimentary alcoholic beverages[1] for on-premises consumption at tribally owned or operated casinos.[2] Oklahoma laws related to alcoholic beverages are found both in Article XXVIII of the Oklahoma Constitution and in the Oklahoma Alcoholic Beverage Control Act ("Act"), 37 O.S. 2001 Supp.2006, § 8 and §§ 502 to 599. The Oklahoma Alcoholic Beverage Laws Enforcement Commission ("ABLE Commission") was created under Article XXVIII, Section 1 of the Oklahoma Constitution to enforce the alcoholic beverage laws of the State of Oklahoma.
Indian tribes own or operate casinos within the State of Oklahoma pursuant to the terms of a gaming compact under the provisions of 3A O.S. Supp.2006, §§ 261 — 282, which is known as the State-Tribal Gaming Act ("Gaming Act"). The Gaming Act legalizes conducting and participating in certain forms of gambling that are otherwise prohibited under 21 O.S. 2001, §§ 941[21-941] — 988, by those federally recognized Indian tribes within this State that choose to accept the State's offer of a gaming compact for such purpose.
The provisions of the form of the Model Tribal Gaming Compact ("Model Compact") are set forth in the Gaming Act at 3A O.S. Supp.2006, § 281, pt. 5(I), which is entitled "Sale of Alcoholic Beverages." The Model Compact at Section 281, part 5(I), in pertinent part provides:
 The sale and service of alcoholic beverages in a facility shall be in compliance with state, federal and tribal law in regard to the licensing and sale of such beverages.
Id. (emphasis added). In other words, the laws of the State of Oklahoma related to the licensing and sale of alcoholic beverages in Article XXVIII
of the Oklahoma Constitution and in the Act apply to each licensed casino.
A tribally owned or operated casino that sells or offers to sell alcoholic beverages to its patrons must apply for an appropriate license for such purpose and become a "licensee" as defined in Section 506(14) of the Act. "Licensee" is defined as follows:
 "Licensee" means any person holding a license under the Oklahoma Alcoholic Beverage Control Act, and any agent, servant, or employee of such licensee while in the performance of any act or duty in connection with the licensed business or on the licensed premises[.]
Id. (emphasis added). Under Section 521 of the Act, licensees are authorized to engage in certain activities consistent with their license. Among the types of license listed in Section 521 is that of a mixed beverage license that authorizes the holder thereof "to sell, offer for sale and possess mixed beverages for on-premises consumption only" and which "shall only be issued in counties of this state where the sale of alcoholic beverages by the individual drink for on-premises consumption has been authorized."[3] Id. § 521(H). The Act provides in Section 537 that certain acts are prohibited as "per se" violations and may not be committed by any licensee of the ABLE Commission. Title 37 O.S. Supp.2006, § 537 in pertinent part provides:
B. No licensee of the ABLE Commission shall:
 . . . .
 4. Advertise or offer "happy hours" or any other means or inducements to stimulate the consumption of alcoholic beverages including:
 . . . .
 b. sell or offer to sell to any person or group of persons any drinks at a price less than the price regularly charged for such drinks during the same calendar week, except at private functions not open to the public;
 c. sell or offer to sell to any person an unlimited number of drinks during any set period of time for a fixed price, except at private functions not open to the public;
 d. sell or offer to sell drinks to any person or group of persons on any one day at prices less than those charged the general public on that day, except at private functions not open to the public[.]
Id. (emphasis added). According to Section 506(35) of the Act, "'[s]ale'means any transfer, exchange or barter in any manner or by any meanswhatsoever, and includes and means all sales made by any person, whether as principal, proprietor or as an agent, servant or employee." Id.
(emphasis added). Based upon this definition, a sale includes any transfer of any alcoholic beverage in any manner or by any means whatsoever, including the transfer of alcoholic beverages which are "free" or "complimentary."
Under Section 537(B)(4) of the Act, licensees, including casinos, are prohibited from engaging in certain "per se" violations including advertising or offering "happy hours" or other means of inducements to stimulate the consumption of alcoholic beverages. Included among the prohibited "other means or inducements" are: (1) the transfer or offer to transfer alcoholic beverages for "free" or as "complimentary" to any person or group of persons, at a price less than the price regularly charged by a licensee for the same beverages during the same calendar week; (2) the transfer or offer to transfer "free" or "complimentary" alcoholic beverages, the price of which is fixed at "free," in an unlimited number to any person during a set period of time, such as that spent gaming; and (3) the transfer of "free" or "complimentary" alcoholic beverages to a certain person or group of people and not to every member of the general public for "free" on the same day. See id.
 TAX TREATMENT OF COMPLIMENTARY ALCOHOLIC BEVERAGES UNDER THE ACT
In the letter you sent requesting an official Attorney General Opinion,[4] you indicated that the provisions of Sections 576(A)(2), (4) and 579(A), (B) of the Act are relevant as they refer to the tax treatment of complimentary alcoholic beverages under the Act.
The Supreme Court of the United States dealt with that principle in the case of Marchetti v. United States, 390 U.S. 39, 44 (1968), which provided:
 The issue before us is not whether the United States may tax activities which a State or Congress has declared unlawful. The Court has repeatedly indicated that the unlawfulness of an activity does not prevent its taxation. . . .
Id. (emphasis added). The fact that an activity may be taxed does not make it legal.
 CONCLUSION
Based upon the foregoing, licensees of the ABLE Commission, including casinos, are prohibited from engaging in certain "per se" violations of Section 537(B)(4) of the Act, including the transfer or offer to transfer alcoholic beverages for "free" or as "complimentary" to any person or group of persons. As the answer to your first question is "no," there is no need to answer your second question.
 It is, therefore, the official Opinion of the Attorney General that:
 1. In all cases where a federally recognized Indian tribe in Oklahoma enters into a model tribal gaming compact with the State of Oklahoma under the State-Tribal Gaming Act, 3A O.S. Supp.2006, §§ 261 — 282, the laws related to the licensing and sale of alcoholic beverages in Article XXVIII of the Oklahoma Constitution and in the Oklahoma Alcoholic Beverage Control Act, 37 O.S. 2001 Supp.2006, § 8 and §§ 502 — 599, apply. This includes the limitations applicable to counties that have not approved liquor by the drink.
 2. Under 37 O.S. Supp.2006, § 537(B)(4), licensees of the Oklahoma Alcoholic Beverage Laws Enforcement Commission, including Indian tribes that own or operate casinos, are prohibited from engaging in certain activities, including advertising or offering "happy hours" or any other means of inducements to stimulate the consumption of alcoholic beverages. These activities include: (1) the transfer or offer to transfer alcoholic beverages for "free" or as "complimentary" to any person or group of persons, which is at a price less than that price regularly charged by a licensee for the same beverages during the same calendar week; (2) the transfer or offer to transfer "free" or "complimentary" alcoholic beverages, the price of which is fixed at "free," in an unlimited number to any person during a set period of time, such as that spent gaming; and (3) the transfer of "free" or "complimentary" alcoholic beverages to a certain person or group of people and not to every member of the general public for "free" on the same day. See 37 O.S. Supp.2006, § 537(B)(4).
W.A. DREW EDMONDSON Attorney General of Oklahoma
BRYAN NEAL Assistant Attorney General
[1] It should be noted this Opinion does not address low-point beer, as defined in 37 O.S. 2001, § 163.2[37-163.2](1).
[2] Even in non-gaming facilities, the State of Oklahoma has authority over Indian liquor transactions concurrently with tribal governments. See 18 U.S.C. § 1161
(1984); Rice v. Rehner, 463 U.S. 713, 726 (1983).
[3] The last phrase of the sentence refers to the limitations applicable to counties due to each county's option for liquor by the drink in Article XXVIII, Section4 of the Oklahoma Constitution and in 37 O.S. 2001, § 590[37-590].
[4] See letter from Stratton Taylor, President Pro Tempore Emeritus, to W.A. Drew Edmondson, Oklahoma Attorney General p. 2 (June 9, 2006) (on file with the Oklahoma Attorney General's Office).